IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOSEPH A. BUFFEY,

    Petitioner,

v.                                            Civil Action No. 5:12cv58
                                               (Judge Stamp)

DAVID BALLARD, Warden,

    Respondent.

## OPINION/REPORT AND RECOMMENDATION
## 28 U.S.C. § 2254

On April 25, 2012, the petitioner Joseph A. Buffey ("Buffey"), through counsel,[1] filed a Petition Under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody. Along with his petition, petitioner filed a Motion for Stay and Abeyance. Petitioner paid the required filing fee the same day.

This case is before the undersigned for an opinion/report and recommendation pursuant to LR PL P 83.09.

### I. Relevant Facts and Procedural History

### A. Petitoner's Conviction and Sentence

In the January 2002 term, the Harrison County, West Virginia Grand Jury returned two indictments against petitioner. In Indictment No. 02-F-10-2, petitioner was charged with one count of burglary, one count of robbery in the first degree, five counts of sexual assault in the first degree, one count of assault during the commission of a felony, and one count of kidnapping.

---

[1] Petitioner is represented by Allen Karlin and Associates of Morgantown, West Virginia, and Barry Scheck and Nina Morrison of the Innocence Project, Inc., in New York, New York.

Indictment No. 02-F-9-2, was charged petitioner with three counts of breaking and entering, one count of petit larceny, and one count of destruction of property.

During the early morning hours of November 30, 2001 an 83 year-old-widow who lived alone at 309 Bridge Street in Clarksburg, West Virginia was awakened by an intruder standing beside her bed. The intruder forced her at knife point to the downstairs portion of her house in search for money and then forced her back to the upstairs bedroom where he sexually assaulted her a number of times.

February 11, 2002, petitioner pled guilty to one count of robbery in the first degree and two counts of sexual assault in the first degree as set forth in Indictment No. 02-F-10-2. In exchange for his guilty plea, the State of West Virginia dismissed the remaining counts in Indictment No. 02-F-10-2 and all of the counts in Indictment No. 02-F-9-2. The State also agreed not to pursue any additional charges against the petitioner related to the offenses listed in the two indictments. Additionally, the State recommended that the maximum sentence petitioner receive on the first degree robbery charge be forty years.

May 21, 2002, the Circuit Court of Harrison County accepted Petitioner's guilty plea and sentenced Petitioner to forty years for the offense of robbery in the first degree. The Court further sentenced Petitioner to an indeterminate sentence of not less that fifteen years, nor more than thirty-five years for each of the offenses of sexual assault in the first degree. Each of the sentences was ordered to run consecutively, for a total sentence of seventy years.

## B. Direct Appeal

Petitioner did not file a direct appeal.

## C. Petitioner's State Habeas Corpus

In his state habeas petition filed on or about November 14, 2002, petitioner raised the following grounds for relief:

(1) his state and federal constitutional rights to equal protection, due process, and a fair and impartial jury trial were violated due to ineffective assistance of counsel for

> (a) persuading petitioner into a plea agreement that he did not want to accept;
> (b) failing to properly advise petitioner on his rights to withdraw his plea agreement before it was accepted by the Court;
> (c) insisting that petitioner take the plea agreement before there was any DNA testing done;
> (d) advising petitioner to take the plea even after petitioner informed counsel that the DNA evidence would exclude him;
> (e) advising petitioner to accept a plea agreement that amounted to a life sentence;
> (f) failing to investigate petitioner's case by failing to request DNA testing, advising petitioner that the knife seized from him was the same knife used during the crime, not addressing the victim's failure to identify the petitioner in a police lineup or to identify the knife used in the crime, and
> (g) cumulative errors.

(2) Petitioner's state and federal constitutional rights to a full and fair trial were violated by prosecutorial and police misconduct for

> (a) the prosecutor's failure to fully pursue the truth surrounding the alleged statements of State witnesses and subsequent presentation of perjured testimony to the Grand Jury;
> (b) the prosecutor's use of hearsay, perjury, conspiracy, coercion, illegally obtained evidence, tampered evidence, withholding of evidence, and obstruction of justice to prove Petitioner committed the acts alleged in the indictment;
> (c) the prosecutor's abuse of discretion in presenting this case to the Grand Jury and proceeding to trial knowing that the allegations were not true and that the trial judge would be favorable to the State's position because of a predisposition of prejudice against petitioner;
> (d) the prosecutor's assumption that the State's witnesses were truthful;
> (e) improper police interrogation tactics, including keeping petitioner in interrogation for 24 hours by use of threats and violence, all the while being depriving him of food and water and the use of a bathroom in order to coerce a confession;
> (f) failure of the police to conduct DNA testing;
> (g) failure of the police to credit petitioner for voluntarily submitting to a polygraph test and passing; and
> (h) failing to investigate alibi witnesses petitioner gave them.

(3) There may have been other evidence of reversible and prejudicial errors, denial of state and federal constitutional rights to equal protection, due process and a fair jury trial, in the transcripts,

3

pre-trial statements and exhibits, and trial and post-trial rulings, but petitioner needed the assistance of counsel to raise all those viable issues.

After counsel was appointed for petitioner in his State habeas proceeding, counsel filed an Amended Petition raising the following additional claim:

(4) Newly-discovered evidence, in the form of DNA test results, which indicated that petitioner was excluded as a match for the DNA evidence collected from the victim.

On March 12, 2004, the State court conducted an omnibus hearing on petitioner's State habeas petition. After being advised as to the purpose of the Losh Checklist, see Losh v. McKenzie, 166 W.Va. 762, 277 S.E.2d 606 (1981), petitioner requested the Court consider the following eleven additional grounds:

(1) involuntary guilty plea;

(2) failure of counsel to take an appeal;

(3) coerced confession;

(4) suppression of helpful evidence by prosecutor;

(5) ineffective assistance of counsel;

(6) refusal of continuance;

(7) sufficiency of the evidence;

(8) question of actual guilt upon an acceptable guilty plea;

(9) a more severe sentence than expected;

(10) excessive sentence;

(11) mistaken advice of counsel as to parole or probation eligibility.

In a written opinion containing findings of fact and conclusions of law, petitioner's State habeas petition was denied on the merits on July 2, 2004. On June 14, 2005, the West Virginia Supreme Court of Appeals refused Petitioner's appeal of that Order.

Petitioner's second state habeas petition was filed on April 19, 2012, and is based "in substantial part on newly discovered, exculpatory DNA test results, obtained on May 6, 2011, that establish his actual innocence and entitle him to relief from his convictions on various state and federal constitutional grounds." (Dkt.# 2 at 2). That petition is still pending, and as of the date the instant petition was filed, no response had yet been received.[2]

### D. **Federal Habeas Corpus**

#### 1. **September 19, 2005 Federal Habeas Petition**

Petitioner filed his first federal habeas petition on September 19, 2005. See 2:05cv70. In it, petitioner alleged

(1) ineffective assistance of counsel for:

(a) coercing petitioner into pleading guilty to crimes which he did not commit by leading petitioner to believe that the results of the DNA and other evidence was overwhelmingly against him, leading petitioner to believe that the Court would agree to send him to the Anthony Center for Youthful Offenders, by advising petitioner to give only yes and no responses at the plea hearing, and by lying to petitioner about being sent to the Anthony Center;
(b) advising petitioner that it was too late to withdraw his guilty plea, and for
(c) failing to file an appeal.

(2) Petitioner's constitutional right to a full and fair trial, equal protection, and due process were violated as a result of prosecutorial and police misconduct; that misconduct coerced petitioner into entering a plea of guilty to crimes which he denies; the state court's denial of petitioner's motion to reverse the guilty pleas amounted to an unreasonable application of United States Supreme Court precedent and was clearly contrary to established federal law.

(3) The lower court's failure to reverse petitioner's guilty plea based on the discovery of new evidence (DNA testing results) indicating that Petitioner was excluded as a match for the DNA

---
[2]Petitioner seeks a stay of the subject federal habeas petition in order to exhaust his now pending state habeas case.

collected from the victim when the evidence was not available to the petitioner at the time he entered his plea agreement violated the constitution and was clearly wrong.

The petitioner's case was considered on the merits and dismissed with prejudice by the Honorable Robert Maxwell on March 29, 2007. See 2:05cv70 (Dkt. # 17). Petitioner did not appeal that decision.

### 2. April 25, 2012 Federal Habeas Petition

The petitioner filed his instant petition on April 25, 2012. Through counsel, petitioner alleges that "new scientific evidence affirmatively proves the falsity of both . . . [petitioner's] "confession" and guilty plea." Petitioner asserts that in 2010, he was given leave to conduct advanced DNA testing pursuant to West Virginia's Right to DNA Testing Act. The new tests results, obtained on May 6, 2011, establish his actual innocence and for the first time reveal that multiple items of evidence from the victim's rape kit contain DNA material from a single male donor mixed with the victim's own DNA; the unique DNA profile of that male donor has an estimated population frequency of just 1 in 40 billion Caucasian males; and petitioner is conclusively excluded as a possible source of that donor DNA.[3]

Specifically, petitioner asserts that

(1) his conviction is invalid because he is actually innocent, and his continued incarceration violates his constitutional rights to due process and to be free from cruel and unusual punishment;

(2) his counsel was ineffective for failing to conduct a minimally adequate investigation into petitioner's innocence before advising him to plead guilty;

(3) counsel was ineffective for failing to move to suppress or challenge petitioner's alleged confession;

---

[3] At this juncture of the case, the undersigned has not included all of the sordid details of the crime or even the significant procedural details leading to the arrest, questioning, statement, recanting of the statement, guilty plea, acceptance of defendant's guilty plea by the trial judge, and sentencing. The undersigned considers those details unnecessary to the discussion of the narrow issue raised.

(4) petitioner's conviction was obtained through knowing use of false and misleading grand jury testimony, in violation of petitioner's due process rights;

(5) West Virginia State court's unconstitutional procedures for post-conviction relief are construed to deny relief to prisoners such as petitioner, who seek to withdraw their guilty plea after obtaining newly-discovered evidence; and

(6) petitioner's conviction is invalid because the State of West Virginia failed to disclose <u>Brady</u> material that would have exculpated him.

There is no record of the Fourth Circuit Court of Appeals granting petitioner prefiling authorization to file the subject motion to vacate or set aside his sentence.

## II. Issue Presented

Is the subject petition procedurally defaulted because:

a) the same is a second and successive petition within the meaning of 28 U.S.C. §2244(b)(1) and (2)(A) and (B), and

b) the same was filed with the without petitioner first moving the court of appeals for an order under 28 U.S.C. §2244(b)(3)(A) authorizing the district court to consider the application?

## III. Analysis/Discussion

Upon the following analysis the undersigned concludes:

1) there is no precedent from the Supreme Court or the Fourth Circuit Court of Appeals which clearly authorizes a District Court to make a threshhold determination that a petition such as Buffey's is not a second or successive petition under §2244(b); and

2)  because Buffey did not obtain an order from the Fourth Circuit Court of Appeals authorizing the District Court to consider the petition prior to its filing, the District Court is without jurisdiction to now consider the same.

In order for a petition to be considered successive, the first petition must have been dismissed on the merits. Harvey v. Horan, 278 F.3d 370 (4th Cir. 2002). Buffey asserted in his September 2005 petition to this court that "(3) The lower court's failure to reverse petitioner's guilty plea based on the discovery of new evidence (DNA testing results) indicating that Petitioner was excluded as a match for the DNA collected from the victim when the evidence was not available to the petitioner at the time he entered his plea agreement violated the constitution and was clearly wrong."[4] It is not disputed at this juncture that DNA testing results from the rape kit articles and samples taken from the victim were not disclosed to Buffey prior to the entry of his guilty plea on May 21, 2002. In fact, the results of the DNA testing were not discovered until after Buffey filed his first *pro se* state writ dated November 14, 2002. In a search of the stored case file, Cpl Matheny found an envelope taped to the outside of the box of evidence which had been returned to him from the lab around July 12, 2002. The envelope contained a laboratory report dated April 5, 2002. The laboratory report appeared to exclude Buffey as a contributor. Petitioner's first § 2254 petition was dismissed on the merits March 29, 2007. See 2:05cv70 (Dkt. # 17).

Buffey's April 25, 2012 petition is the second petition he has filed regarding his underlying claim that DNA evidence excludes him as the perpetrator of the crime and that he is actually innocent.

---

[4]Other grounds were asserted in the first federal petition, but they are not relevant to the discussion at issue.

8

As prviously noted, Buffey asserts that subsequent to the denial of his 2005 federal habeas petition, pursuant to a November 16, 2010 order of the state circuit court, new DNA testing was performed on the rape kit and other evidence. The lab results and report from this testing became available May 6, 2011. Buffey contends the results "raise a reasonable probability that, in light of all the evidence, the convicted person's verdict or sentence would have been more favorable" had the results been available at the time of the original plea and conviction. See W.Va. Code § 15-2B-14(c)(1)(B)[5]. As previously noted, Buffey argues the new DNA test results statistically and conclusively excludes him as the perpetrator of the sexual assaults on the 83 year old victim.[6]

Buffey argues "the instant habeas petition is based on DNA test results that were obtained using advanced DNA methodology unavailable at the time of the earlier proceedings" and therefor, "it is not a 'second or successive' petition withing the meaning of 28 U.S.C.§2244(b), as that provision has been interpreted by the U.S. Supreme Court. *See Panetti v. Quarterman*, 551 U.S. 930, 943-44 (2007); *see also, e.g. United States v. Stewart*, 646 F.3d 856, 864-65 (11th Cir. 2001); *James v. Walsh*, 308 F.3d 162 168 (2nd Cir. 2002); *Crouch v. Norris*, 251 F.3d 720, 724 (8th Cir. 2001)."

*Panetti* involved whether a prisoner, who was sentenced to die, was procedurally barred from asserting a ***Ford*** claim in his habeas petition when he had not raised such a claim in his earlier petition which had been denied. Analyzing the gate keeping provisions of 28 U.S.C. §2244(b)(2), Justice Kennedy, for the 5-4 majority, wrote: "[t] phrase 'second or successive' is not self-defining. It takes its full meaning from our case law, including decsions predating the enactment of the Antiterrorism and Effective Death Penalty Act of 1966 (AEDPA)(internal

---

[5]W.Va. Code, § 15-2B-14 became effective November 16, 2004.
[6]Buffey also argues the DNA results establish he is actually innocent of the non-sexual assault charges to which he previously pled guilty.

9

citations omitted). The Court has declined to interpret 'second or successive' as referring to all §2254 applications filed second or successively in time, even when the later filings address a state-court judgment already challenged in a prior §2254 application." Justice Kennedy pointed to the Court's interpretation of §2254 in *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998) as illustrative explaining that the prisoner filed his first application claiming he was incompetent to be executed which was dismissed as premature by the district court because no execution date had been set. When he filed his application after the execution date was set again claiming he was incompetent to be executed (***Ford)***, the State argued he was barred because his second petition was successive. The Supreme Court rejected the state's contention holding that "in light of the particular circumstances presented by a ***Ford*** claim, it would treat the two filings as a single application. The *Panetti* majority concluded "in accord with this precedent, that Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture presented her: a §2254 application raising a ***Ford*** - based incompetency claim filed as soon as that claim is ripe." *Id.* 943-945.

Citing *Panetti,* the Eleventh Circuit in *Steward v. US*, 646 F2d 856 held that the "second or successive" gate keeping provision of AEDPA was " a term of art that takes its full meaning from the Supreme Court's case law and should not be applied literally, "[p]articularly when a petitioner raises a claim that could not have been raised in a prior habeas petition." In attempting to determine an approach that was not so broad that it would threaten Congress's clear intention to limit "second or successive" attempts at post-conviction relief, the *Steward* Court looked at *Leal Garcia v. Quarterman,* 573 F.3d 214, 222 (5th Cir. 2009) holding a subsequent §2254 petiton "that was based on a defect (failure to notify accused foreign national's consulate) that did not

arise until after the proceedings on the previous petition were completed was not successive." *Stewart*, supra at 861. The Eleventh Circuit found that like *Leal Garcia*, Stewart fell into a recognized small subset of unavailable claims that must not be categorized as successive: "[C]laims based on a factual predicate not previously discoverable are successive," but ""[i]f ... the purported defect did not arise, or the claim did not ripen, until after the conclusion of the previous petition, the later petition based on that defect may be non-successive." Stewart was sentenced as a career offender. After being so sentenced, he sought and was successful in getting his state convictions on which his career offender sentence was based, vacated. Finding that Stewart had acted diligently and his *Johnson* claim was not available before his proceedings on his initial §2255 motion concluded, the Eleventh Circuit held Stewart's numerically second §2255 petition is not precluded by the second or successive gatekeeping provision §2255(h).

In its 2002 decision *James v. Walsh*, 308 F.3d 162, the Second Circuit Court of Appeals determined that James' 1999 (habeas petition) claim that the Department of Corrections had incorrectly credited his time served and therefore miscalculated his conditional release date was properly brought under 28 U.S.C. §2254, not §2241, and was therefor subject to the second or successive gatekeeping provisions of AEDPA. However, the Court further found the James petition was not barred because James "could not have argued that he was in custody in violation of the laws of the United States before the time when, according to his calculations, he should have been released, that is, before April 1999. Thus, the present claim had not arisen by 1997, when James filed his first habeas petition. Because the claim in the 1999 petition did not exist when James filed his 1997 petition, the 1999 petition was not 'second or successive' for the purposes of AEDPA's gatekeeping provisions." *Id.* 166-169.

The Eighth Circuit Court of Appeals in *Crouch v. Norris*, 251 F.3d 720 (2001) held: "Crouch's proposed challenge to the execution of his sentence should not be deemed 'second or successive' merely because he has previously filed a §2254 challenge to the constitutionality of his convictions. ... Crouch's proposed petition is not abusive because he could not have raised his parole-related claims in his first habeas petition. His first parole denial is dated November 23, 1998, some ten months after he filed his §2254 petition. *Id.* 722-725.

The undersigned has found no case from any circuit, including the Fourth Circuit, or the US Supreme Court which has held the gatekeeping provisions of 28 U.S.C. §2244(b) are inapplicable with respect to a numerical second petition because the DNA analysis and results were not available when the numerical first petition was denied on its merits. While it may be true that Buffey had no way to know in 2005 that in 2010-2011 a new and better DNA test would seemingly exonerate him, the undersigned submits it is for the Court of appeals to determine whether such a claim falls "into a recognized small subset of unavailable claims that must not be categorized as successive: "[C]laims based on a factual predicate not previously discoverable are successive," but "[i]f ... the purported defect did not arise, or the claim did not ripen, until after the conclusion of the previous petition, the later petition based on that defect may be non-successive." *Steward v. US*, *supra* 863. The method the Court of Appeals has at its disposal for making such a determination is the application to file a successive petition made under 28 U.S.C. §2244(b)(3). Congress resided that authority in the Courts of Appeals.

Early after Congress' adoption of AEDPA, some circuits (*Liriano v. United States*, 95 F.3d 119 (2nd Cir. 1996); *Coleman v. United States,* 106 F.3d 339 (10th Cir. 1997); and *Simms v. Terbush*, 111 F.3d 45 (6th Cir. 1997)) adopted the practice of permitting petitions claimed to be

12

second or successive to be transferred from the district court where filed to the Court of Appeals without prior dismissal to determine whether they were barred by the gatekeeping provisions of AEDPA. The undersigned has found no such holding in the Fourth Circuit.

28 U.S.C. §1631 provides: **Transfer to cure want of jurisdiction**

"Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred." However, the undersigned has found no mention of this provision in a decision from a district court to the Fourth Circuit Court of Appeals or vice versa.

The undersigned concludes: pursuant to 28 U.S.C. §2244(b)(3) prior to filing a successive petition with the district court, a petitioner must seek an order from the court of appeals authorizing the district court to consider the application.[7]

---

[7] 28 U.S.C. § 2244 states in pertinent part:
  (a) No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.
  (b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
  (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless-
  (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
  (B)(i) the factual predicate for the claim could not have been discovered previously

13

Because petitioner has not obtained authorization from the Fourth Circuit Court of Appeals to file his successive §2254 motion/petition in this Court, this Court has no jurisdiction to hear his successive motion/petition. Harvey v. Horan, *supra* at 379.

## IV. Recommendation

For the reasons stated above, the undersigned recommends that the Court enter an Order **DISMISSING** the instant petition (Dkt.# 2) because it is a successive petition and the petitioner has not received authorization from the Fourth Circuit Court of Appeals to file a successive §2254 petition. Further, the undersigned recommends that petitioner's Motion for Stay and Abeyance (Dkt.# 3) be **DENIED** as moot.

Any party may file, **within fourteen (14) days** after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

---

through the exercise of due diligence; and
(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
(3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

The Clerk of the Court is directed to mail a copy of this Opinion/Report and Recommendation to counsel of record by electronic means.

Dated: May 2, 2012

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE